UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

\* \* \* \* \*

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | |
| Plaintiff, ) | 3:05-CR-00161-LRH (VPC) |
| ) | |
| v. ) | |
| ) | ORDER |
| SEAN C. JOHNSON, ) | |
| ) | |
| Defendant. ) | |

Presently before the court is defendant Sean Johnson's ("Defendant") Motion to Suppress (#15[1]), to which the government has filed a Reply (#23). Following an evidentiary hearing on June 8, 2006, Defendant filed a Closing Points and Authorities in Support of the Motion to Suppress (#48), to which the government responded (#49), and Defendant subsequently replied (#50).

**I. Factual Background**

Washoe County Detective Kelley Heydon ("Ms. Heydon") arrested Defendant on June 13, 2005, following Internet communications between Ms. Heydon, posing as a fourteen-year-old female, and Defendant between June 8, 2005, and June 13, 2005. Defendant and Ms. Heydon, posing as the fourteen-year-old, agreed to meet at 12:15 p.m. on June 13, 2005, at Mervyn's in Sparks, Nevada. Upon his arrival at Mervyn's by public transportation, Ms. Heydon arrested

---

[1] Refers to the court's docket number.

1  Defendant, without a warrant, under charges of using technology to lure a child under the age of 16
2  from her home and with the intent to engage in sexual conduct with the minor in violation of
3  section 201.560 of the Nevada Revised Statutes, and attempted statutory sexual seduction in
4  violation of sections 193.330 and 200.368 of the Nevada Revised Statutes.
5        Following Defendant's arrest, officers issued Miranda warnings and took him to an
6  interrogation room where he made incriminatory statements and consented to a search of his home.
7  During the search of his home, officers found images of child pornography, as defined in 18 U.S.C.
8  § 2256, on Defendant's computer.
9        On August 15, 2005, the Washoe County District Attorney dismissed the state charges
10 against Defendant.  Two days later, on August 17, 2005, a grand jury indicted Defendant on
11 charges of knowing possession of computer hard drives, disks, storage media, and other materials
12 that contained more than three (3) images of child pornography that had been mailed, shipped, or
13 transported in interstate or foreign commerce in violation of 18 U.S.C. § 2252A(a)(5)(B).  The
14 Indictment also charges Defendant with the use of a facility or means of interstate commerce to
15 knowingly persuade, induce, entice, or coerce any individual under the age of eighteen (18) years of
16 age to engage in sexual activity for which any person can be charged with a criminal offense under
17 federal, state and local law in violation of 18 U.S.C. § 2422(b).

18 **III. Discussion**

19       In Nevada, a law enforcement officer may arrest a person when a felony has been
20 committed and the officer has reasonable cause to believe that the person committed the felony.
21 Nev. Rev. Stat. § 171.124.  "Probable cause exists if the facts and circumstances known to the
22 officer warrant a prudent man in believing that a felony has been committed by the person
23 arrested."  *Nootenboom v. State*, 418 P.2d 490, 492 (Nev. 1966), *overruled on other grounds by*
24 *Morales v. State*, 992 P.2d 252 (Nev. 2000).  Otherwise stated, probable cause means knowledge of
25 facts and circumstances that lead to an honest and strong suspicion that the person arrested is
26

guilty. *Schnepp v. Nevada*, 415 P.2d 619, 621 (Nev. 1966).

Defendant argues that Ms. Heydon lacked probable cause to make the arrest. Specifically, he argues that the Washoe County Sheriff's Office and the Washoe County District Attorney's Office were placed on notice, through Nevada state district court rulings, that a defendant communicating with an adult posed as an underage individual cannot "knowingly" communicate with the underage person because there is no underage individual actually involved in the communication. Because of the Nevada district court rulings, Defendant maintains that Ms. Heydon knew that Defendant did not commit a felony when he communicated with her over the Internet, as no minor was involved in the communications. In addition, Defendant argues that the issuance of Miranda warnings, Defendant's incriminatory statements and consent to search his home "did not purge the taint of [his] illegal arrest." (Def.'s Closing P. & A. in Support of Def.'s Mot. to Suppress Evidence (#48) at 5.) As a result, Defendant maintains that all evidence gathered following the allegedly illegal arrest should be suppressed.

In order for the court to admit evidence acquired following an illegal arrest, the government must first establish that the defendant made any incriminatory statements or gave consent to search voluntarily. *Brown v. Illinois*, 422 U.S. 590, 604 (1975). Second, the government must establish that there was a sufficient break between the defendant's illegal arrest and his subsequent statements. *Id.* at 603. The court will address each of these requirements in turn. However, after reviewing the evidence, briefings and relevant law, the court finds that Defendant's rights were not violated such that suppression of the evidence is required. Because the court finds that, regardless of the legality of Defendant's arrest, suppression of the evidence is not required, it will not address whether Defendant's arrest was in fact illegal.

**A. The Voluntariness of Defendant's Statements**

The court's determination of the voluntariness of incriminatory statements is based on the totality of the circumstances, *Colorado v. Connelly*, 479 U.S. 157, 176 (1986), although the

3

1  primary concern is whether police engaged in overreaching conduct.  *Id.* at 167.  Specifically, the
2  court must determine whether "the government obtained the statement by physical or psychological
3  coercion or by improper inducement so that the suspect's will was overborne."  *Derrick v.*
4  *Peterson*, 924 F.2d 813, 817 (9th Cir. 1990) (quoting *United States v. Guerrero*, 847 F.2d 1363,
5  1366 (9th Cir. 1988)).  In determining whether "the suspect's will was overborne," *id.*, the court
6  considers the age and intelligence of the defendant, whether advice on constitutional rights was
7  provided, the length of detention, whether questioning was repeated or prolonged and the use of
8  physical punishment.  *Schneckloth v. Bustamonte*, 412 U.S. 218, 226 (1973) (citations omitted).
9         Here, the interviewing officers, Ms. Heydon and Special Agent Kohler, informed Defendant
10  of his Miranda rights and the interview was not prolonged.  Defendant is twenty-five years old, and
11  according to Ms. Heydon, appeared throughout her contact with him to be of normal intelligence.
12  However, during the post-arrest interview, Defendant informed the interviewers that he had been
13  diagnosed with Attention Deficit Hyperactivity Disorder ("ADHD") and may be bipolar.  He
14  further informed the interviewers that he had been off of his bipolar medication for one week and
15  felt confused.  (Def.'s Closing P. & A. (# 48) at 8-9.)  Defendant maintains that his statements
16  regarding his mental health indicate that he did not make the incriminating statements voluntarily.
17  The government, on the other hand, states that Defendant's apparent maturity and ability to
18  represent himself verbally during both the interview and previous communications with Ms.
19  Heydon indicate his "intelligence and reflective mental qualities."  (Government's P. & A. in Resp.
20  to Def.'s Mot. to Suppress (#49) at 3.)  In addition, the government notes that the interviewing
21  officers explained to Defendant what was happening and Defendant appeared to understand.  The
22  court finds the government's arguments persuasive.  Defendant has provided no evidence
23  supporting the contention that his mental condition affected his ability to make voluntarily,
24  cognizant statements to the interviewing officers.  There is no evidence that Defendant's mental
25  condition affected either his ability to understand his rights or his ability to understand the situation
26

he was in.  As a result, the court finds that Defendant's mental condition did not influence the voluntariness of his statements.

Defendant also argues that the officers coerced the incriminatory statements from him when they referred to the potential involvement of the Federal Bureau of Investigation ("FBI") in the case and the consequences of that involvement.  Specifically, the interviewing officers informed Defendant that, if the FBI became involved, Defendant could be subject to a mandatory five-year prison sentence.  While these statements may have been coercive, they were not inaccurate or misleading nor do they constitute official misconduct.  In light of Defendant's age and intelligence, the issuance of Miranda warnings, and the brief detention, the court finds that Defendant's statements were voluntary.

**B. The Attenuation Analysis**

As stated above, the voluntariness of the defendant's statements is a threshold requirement to the determination of the admissibility of evidence obtained following an illegal arrest.  *Brown*, 422 U.S. at 604.  Even if a statement is voluntary under the Fifth Amendment, a determination of the admissibility of evidence under the Fourth Amendment involves a separate inquiry.  *Taylor v. Alabama*, 457 U.S. 687, 690 (19).  In *Brown v. Illinois*, the Supreme Court addressed the issue of whether the issuance of Miranda warnings sufficiently attenuated the taint of an illegal arrest such that the court was not required to suppress the defendant's incriminatory statements as the fruit of an illegal arrest.  422 U.S. 590, 591-92 (1975) (citing *Wong Sun v. United States*, 371 U.S. 471 (1963)).  In determining the admissibility of such evidence, the Supreme Court considered the following four factors: (1) whether Miranda warnings were issued; (2) the temporal proximity of the arrest and the confession; (3) the presence of intervening circumstances; and (4) the purpose and flagrancy of the official misconduct.  *Id.* at 603-04.  No single fact is dispositive and the burden of showing the admissibility of the incriminatory statements rests on the government.  *Id.*

The government concedes that the time between the arrest and the incriminating statements

5

1  and the lack of intervening circumstances favor Defendant.  However, the government argues that
2  because Defendant made the statements voluntarily, the officers administered Miranda warnings
3  and there was no flagrant official misconduct, the evidence should not be suppressed.  Defendant
4  does not dispute that the officers administered Miranda warnings.  Instead, Defendant maintains
5  that the government relies upon a "purposeful and flagrant utilization of an unconstitutional arrest
6  to gather evidence and prosecute [Defendant]."  (Def.'s Reply to Government's P. & A. (#50) at 2.)

7        "[C]ourts frequently hesitate to find that an officer's violation of the law was 'purposeful'
8  or 'flagrant' when the officer broke the law acting in good faith."  *Washington*, 387 F.3d at 1075
9  (citations omitted); *see also Rawlings v. Kentucky*, 448 U.S. 98, 109-10 (1980) (finding that, while
10 the reasonableness of the officers' belief that they could detain an individual while awaiting a
11 search warrant and their belief about the scope of the warrant was questionable, it did not rise to the
12 level of flagrant misconduct).  Alternatively, courts have found flagrant misconduct where officers
13 entered a home and the "entry, both in design and execution, was investigatory," *Washington*, 387
14 F.3d at 1077 (quoting *Brown*, 422 U.S. at 605), and where officers admitted to lacking probable
15 cause to arrest.  *Kaupp v. Texas*, 538 U.S. 626, 633 (2003).

16       Here, at the time of the arrest, at least one Washoe County District Court Judge had ruled
17 that no crime is committed under the luring statute, section 201.560 of the Nevada Revised
18 Statutes, where there is no actual minor involved.  *See In Re Thurber*, CR04W-1056 (unpublished).
19 Defendant relies upon this fact in arguing that the Washoe County Sheriff's Office and the Washoe
20 County District Attorney's Office were put on notice that, when an individual communicates with a
21 person over the age of sixteen, but believes them to be less than sixteen years of age, no felony has
22 been committed.  While the Washoe County Sheriff's Office and the Washoe County District
23 Attorney's Office may have been aware of this decision, and potentially other similar decisions, the
24 Nevada Supreme Court has yet to address the issue.  Because state district court cases in Nevada
25 are unpublished and not binding authority, the issue cannot be considered settled state law until the
26

Nevada Supreme Court addresses it. Additionally, neither the Washoe County Sheriff's Office nor the Washoe County District Attorney's Office have issued directives advising agents that arrests under section 201.560 of the Nevada Revised Statutes are no longer valid if no actual minor is involved. In fact, as Ms. Heydon stated at the suppression hearing, the Crimes Against Children Task Force is continuing to investigate and make arrests under section 201.560 of the Nevada Revised Statutes. In the absence of a binding court decision on the issue, a change in the statute, or instructions to the contrary from the Washoe County Sherriff's or District Attorney's Offices, it was reasonable for Ms. Heydon to believe that she had probable cause to arrest Defendant. As a result, the allegedly illegal arrest does not rise to the level of purposeful and flagrant misconduct meant to be deterred by the exclusionary rule. *See Brown*, 422 U.S. at 602 (noting that a primary purpose of the exclusionary rule of the Fourth Amendment is to deter police from engaging in unlawful searches and seizures).

**III. Conclusion**

The voluntariness of Defendant's statements, the issuance of Miranda warnings and the lack of official misconduct rising to the level of flagrancy sufficiently "purged the taint" of Defendant's potentially illegal arrest. As a result, the court will admit the evidence relating to Defendant's incriminatory statements and items found as a result of the search of his home.

IT IS THEREFORE ORDERED that Defendant's Motion to Suppress (#15) is hereby DENIED.

IT IS SO ORDERED.

DATED this 9th day of August, 2006.

_____
LARRY R. HICKS
UNITED STATES DISTRICT JUDGE